## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

J.Q.R., *by his parent and next friend*
NATIA ROGERS

        *Plaintiff,*

   v.

DISTRICT OF COLUMBIA
GOVERNMENT, et al.,

        *Defendant*.

Civil Action No. 1:20-cv-02477 (CJN)

## MEMORANDUM OPINION

J.Q.R., a minor, alleges that he was falsely arrested while attending school at Democracy Prep Congress Heights.  He asserts various tort and constitutional claims against the officer who arrested him, the District of Columbia, and Democracy Prep.  The District moves to dismiss some of the claims against it, while Congress Heights moves to dismiss all of the claims against it.  The Court will grant both motions.

### I. Background

At the time of the arrest, J.Q.R. was a fourteen-year-old student at Congress Heights with an "emotional disability."  Am. Compl., ECF No. 30, at ¶¶ 2, 15.[1]  One day, while school was ending, the school's principal, Jacqueline Walters, and two police officers approached him.  *Id.* at ¶¶ 20–21.  The officers asked J.Q.R. about a mobile phone that was missing, and one of the officers grabbed J.Q.R.'s arm as he attempted to leave the area.  *Id.* at ¶¶ 22–23, 27.  J.Q.R. could not

---

[1] For the sake of the motion to dismiss, the Court must, of course, accept all well-pleaded facts in the complaint as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

provide any information about the phone and, as he saw it, did not commit any crime. *See id.* at ¶ 23–33.  J.Q.R. thus asked for someone to call his mother. *Id.* at ¶ 26.  Although Principal Walters knew his mother's contact information, she did not call her. *Id.* at ¶ 30.

J.Q.R. attempted to leave for home, but before he did, one of the officers (Officer Williams) arrested him. *Id.* at ¶ 35.  It was a violent arrest.  Williams grabbed J.Q.R. and pressed him against a brick wall. *Id.*  He then threw J.Q.R. face first to the ground, pressed his knee on J.Q.R.'s arms, and handcuffed him. *Id.*  Williams exerted so much force that J.Q.R. suffered a compound, displaced fracture of his right arm, not to mention many bruises and scratches. *Id.* at ¶ 37.  The injuries caused J.Q.R. to miss a significant amount of school, and his treating physician found he has suffered a "permanent injury" to his arm. *Id.* at ¶¶ 39–40.

Williams did not turn on his body camera. *Id.* at ¶ 36.  The Metropolitan Police Division's Internal Affairs Division had previously investigated Williams for excessive force and for turning off his body camera on at least three prior occasions. *Id.* at ¶ 43.

This lawsuit followed.  In his operative complaint, J.Q.R. names three defendants:  the District of Columbia, Williams, and Democracy Prep. *See id.* at ¶¶ 16–18.  (Williams has yet to be served.)  He alleges four counts against some or all of these defendants.  Count I alleges unreasonable seizure and excessive force, in violation of 42 U.S.C. § 1983, against Williams. *Id.* at ¶¶ 44–51. Count II alleges "municipal liability" under § 1983 for "allowing the use of Knee-to-back and Knee-to-arm Techniques and Failure to Remove or Discipline Officers who frequently abuse citizens' Constitutional Rights." *Id.* at 10 (capitalization in original); *see id.* at ¶¶ 52–60. Count III, in turn, broadly claims "gross negligence" by Democracy Prep, *see id.* at ¶¶ 61–66, and seems to base that "gross negligence" on claimed violations of the Constitution, Title IX, the Rehabilitation Act, and the Individuals with Disabilities Education Act, *see id.* at ¶ 64.  Finally,

Count IV alleges "municipal vicarious liability" for the "common law torts of false imprisonment, false arrest and assault and battery and excessive force, [and] intentional infliction of emotional distress." *Id.* at 13 (capitalization modified, punctuation in original); *see also id.* at ¶¶ 67–68.

## II. Legal Standard

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). "[A] formulaic recitation of the elements of a cause of action," however, "will not do"; a complaint must provide more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Put differently, a claim to relief must be "plausible on its face," and the pleadings must "nudge [the] claims across the line from conceivable to plausible." *Id.* at 570.

## III. Congress Heights's Motion to Dismiss—Count III

J.Q.R. asserts a single claim of "gross negligence" against Congress Heights. He appears to allege seven ways in which the school acted grossly negligently. In particular, J.Q.R. alleges that Congress Heights (1) failed to properly supervise the officers, (2) failed to take "corrective action," and (3) failed to have a policy in place regarding the restraint of students. *See* Am. Compl. ¶¶ 63, 65. And while his briefs and Complaint are hard to follow, J.Q.R. appears also to allege that his gross-negligence claim can be sustained by four theories of deliberate indifference, as shown by violations of (4) Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681(a)); (5) the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*; (6) the Individuals with

Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*; and (7) failing to implement a policy regarding the restraint of students.  Am. Compl. ¶ 64.

Although J.Q.R. frames this claim as one for gross negligence, "[t]he law of the District of Columbia does not recognize degrees of negligence."  *Warner v. Capital Transit Co.*, 162 F. Supp. 253, 256 (D.D.C. 1958); *see also Wells v. Hence*, 235 F. Supp. 3d 1, 13 (D.D.C. 2017).  Courts in the District of Columbia distinguish between and among degrees of negligence only when explicitly written into a statute.  *See Hernandez v. District of Columbia*, 845 F. Supp. 2d 112, 115–16 (D.D.C. 2012).  To establish a claim for negligence under District of Columbia law, and thus to survive a motion to dismiss, a plaintiff must plead sufficient facts showing: "(1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach."  *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011).  Even under this framing, however, J.Q.R. has failed to adequately plead any of his seven theories.

Start with his first theory—negligent supervision.  The tort of negligent supervision "recognizes that an employer owes specific duties to third persons based on the conduct of its employees."  *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 575 (D.C. 2007).  A mandatory element of a negligent-supervision claim is thus the ability to supervise.  *Godfrey v. Iverson*, 559 F.3d 569, 573 (D.C. Cir. 2009); *see Spicer v. District of Columbia*, 916 F. Supp. 2d 1, 3 (D.D.C. 2013).  But J.Q.R. does not allege that Williams is an employee of Congress Heights, nor does he plead any facts suggesting that Congress Heights had supervisory power over Williams.

True, occasionally vicarious liability can attach for nonemployees, such as in a principal-agent relationship.  But establishing a principal-agent relationship requires its own showing.  "First, the court must look for evidence of the parties' *consent* to establish a principal-agent

relationship.  Second, the court must look for evidence that the activities of the agent are subject to the principal's *control*."  *Henderson v. Charles E. Smith Mgmt., Inc.*, 567 A.2d 59, 62 (D.C. 1989) (emphasis in original).  Several factors help guide this analysis, such as whether the purported principal has control over "(1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer."  *Saint-Jean v. District of Columbia*, No. 08-1769, 2016 WL 10829005, at *5 (D.D.C. Sept. 12, 2016) (quoting *Judah v. Reiner*, 744 A.2d 1037, 1040 (D.C. 2000)).  Of all the factors, the fourth—"the power to control the servant's conduct"—is the most decisive.  *Id.*; *see also LeGrand v. Ins. Co. of N. Am.*, 241 A.2d 734, 735 (D.C. 1968).

But J.Q.R. does not plausibly allege that Congress Heights (whether through Principal Walters or otherwise) had any supervisory authority over Williams and the other officers, let alone any power to control their conduct.[2]  The Amended Complaint merely alleges that "Principal Jacqueline Walters was the policymaker for Democracy Prep Congress Heights and was responsible for supervising personnel like Defendant Officer Todd S. Williams[.]"  Am. Compl. ¶ 62.  It provides no facts to support that wholly conclusory assertion.

J.Q.R. appears to advance a second theory of liability under the broad heading of gross negligence.  In particular, he appears to claim that Congress Heights had a duty to take corrective action during the arrest and failed to do so.  But the Amended Complaint includes no facts to

---

[2] In addition to the failure to state a plausible claim that Congress Heights had any supervisory authority, Plaintiff implicitly conceded this point by failing to respond to it in his opposition brief. C*f. Shankar v. ACS–GSI*, 258 Fed. Appx. 344, 345 (D.C. Cir. 2007) (holding that plaintiff conceded the merits of an issue when he "did not respond in any way to defendant's argument" on that issue in his opposition before the district court) (citing Local Civil Rule 7(b)).

support this conclusion.  In any event, D.C. Code § 5-117.04 provides that "[a]ny willful interference with the Chief of Police, or with any member of the police force . . . while in official and due discharge of duty, shall be punishable as a misdemeanor."  No school representative could have intervened in the arrest without committing a crime, which is entirely inconsistent with the idea that a duty to intervene existed.

J.Q.R. also claims that Congress Heights was deliberately indifferent by failing to follow Title IX.  Title IX protects persons against being "excluded from participation in, [ ] denied the benefits of, or [ ] subjected to discrimination under any education program or activity receiving Federal financial assistance" on the basis of sex.  20 U.S.C. § 1681(a).  The statute grants relief only when that misconduct includes exclusion, denial of services, or discrimination *on the basis of sex*.  *Id.*; *see also Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 639–40 (1999).  But J.Q.R. makes no allegations, factual or otherwise, that sketch out a theory of liability on the basis of sex.  Indeed, he fails to even make the conclusory allegation that he was treated the way he was because of his sex.

J.Q.R. next claims that Congress Heights was grossly negligent by being deliberately indifferent to his "constitutional rights," specifically by failing to follow the Rehabilitation Act.  The Rehabilitation Act, of course, has nothing to do with "constitutional rights."  Rather, it prohibits discrimination by reason of handicap in federally funded programs.  *See, e.g.*, *Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 405 (1979).  To state a claim of discrimination under the Rehabilitation Act, a plaintiff must thus show that "he . . . was discriminated against solely by reason of his handicap."  *B.D. v. District of Columbia*, 66 F. Supp. 3d 75, 80 (D.D.C. 2014) (quoting *Walker v. District of Columbia*, 157 F. Supp. 2d 11, 35 (D.D.C. 2001)) (alteration omitted).  But again, J.Q.R. fails to allege any facts that he was treated differently from any of his

similarly situated peers.[3]  Nor has he alleged that Congress Heights's handling of the situation was in any way motivated by his disability.

J.Q.R. next seems to allege that Congress Heights was "grossly negligent" by being deliberately indifferent to his "constitutional rights" by failing to follow part B of IDEA.  But the IDEA is a statutory scheme for the funding and creation of educational programs to address the needs of disabled children.  J.Q.R. has not alleged or pointed to any factual predicates for how the excessive-force and the false-arrest allegations have anything to do with IDEA.  *See Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 367–69 (1985).[4]  And even if he did, "[c]ompensatory damages . . . are not available under the IDEA.  As this court has held, a plaintiff seeking money damages must bring a Section 1983 claim for damages to vindicate his or her rights under the IDEA."  *T.M. v. District of Columbia*, 961 F. Supp. 2d 169, 173 n.3 (D.D.C. 2013) (quoting *Walker v. District of Columbia*, 157 F. Supp. 2d 11, 30, 35 (D.D.C. 2001).

J.Q.R. also claims that Congress Heights was grossly negligent by being deliberately indifferent to his constitutional rights by failing to have a policy regarding the restraint of students.[5] This claim is confused about the nature of a general gross-negligence claim, the deliberate-

---

[3] Plaintiff included several new facts in his opposition brief that may have changed this analysis. *See* Pl. Opp. at 1–2.  But it is axiomatic that a plaintiff cannot amend his operative complaint through facts first included in an opposition brief.  *Ruiz v. Millennium Square Residential Ass'n*, No. 19-cv-03765, 2022 WL 296200, at *8 (D.D.C. Feb. 1, 2022); *Ross v. Davis*, 74 F. Supp. 3d 231, 236 (D.D.C. 2014); *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 90 (D.D.C. 2014).

[4] Plaintiff again included several new facts in his opposition brief that may have changed this analysis.  *See* Pl. Opp. at 1–2.  Again, it is axiomatic that a plaintiff cannot amend his operative complaint through facts first alleged in an opposition brief.  *Ruiz v. Millennium Square Residential Ass'n*, No. 19-cv-03765, 2022 WL 296200, at *8 (D.D.C. Feb. 1, 2022); *Ross v. Davis*, 74 F. Supp. 3d 231, 236 (D.D.C. 2014); *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 90 (D.D.C. 2014).

[5] If Plaintiff brought a common-law claim that it was negligent for the school not to have such a policy, this analysis might be different.

indifference theory, and their relationship to Congress Heights's failure to have a policy.  J.Q.R. seems to allege that Defendant was "deliberatively indifferent" to his "constitutional rights," but he alleges this claim under the guise of gross negligence.

In any event, J.Q.R.'s claim is that the school's deliberate indifference stems from its failure to adopt and enforce a restraint policy.  The standard for deliberate indifference is clear: "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Board of Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 410 (1997)); *see also Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) ("[Deliberate indifference] simply means that, faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction."); *Williams v. Ellerbe*, 317 F. Supp. 3d 144, 147–148 (D.D.C. 2018).  Yet the Amended Complaint states that the "[p]ublic individual charter schools were not required to create any policy and could do without any policy at all."  Am. Compl. ¶ 9.  It does not allege that Congress Heights was notified regarding the problems with not having such a policy, nor is it at all clear whether J.Q.R. alleges that the school should have known that by not adopting a policy it was acting unconstitutionally.  Without either type of allegation, this claim cannot survive the motion to dismiss.

## IV. The District of Columbia's Motion to Dismiss

### A.  Count II

In Count II, J.Q.R. asserts the claim, brought pursuant to 42 U.S.C. § 1983, that the District committed a constitutional violation by "allowing" Williams to engage in excessive force through

the use of knee-to-back and knee-to-arm restraint techniques.[6]  Municipalities can only be liable if it is the "municipality *itself* [that] causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original).  A two-step inquiry governs this question: (1) whether the complaint states a claim for a predicate constitutional violation, and (2) whether the complaint states a claim that a custom or policy of the municipality caused the violation.  *Baker v. District of* Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003).

It is at this second step that J.Q.R.'s Complaint is inadequate.  It does not make any explicit reference to an MPD policy, nor to any statute.  As for a custom, J.Q.R. never alleges one specifically, nor does he clearly allege that it is MPD's custom to use these techniques in their normal course of practice.[7]

J.Q.R. does allege that the District failed to act despite knowledge of Williams's prior conduct, and further that it failed to properly train and supervise him.  Again, the Supreme Court has defined the standard for municipal liability under a deliberate-indifference claim: "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Connick*, 563 U.S. at 61 (2011) (quoting *Brown,* 520 U.S. at 410).

J.Q.R. does not allege facts to establish such liability.  Indeed, he does not allege any specific instances of Williams having previously acted unconstitutionally.  To be sure, J.Q.R. does allege that MPD's Internal Affairs Division investigated some (unidentified) instances of

---

[6] It is unclear in Plaintiff's Amended Complaint if this is exactly what he alleges.  The Amended Complaint alleges that MPD "tolerates" such conduct, but it also states that the Department has "training modules" that train officers to do such knee-to-arm and knee-to-back restraint techniques. Am. Compl. at ¶¶ 54, 56.

[7] J.Q.R. again implicitly conceded this point by failing to respond in his opposition brief.  *See* note 2, supra.

Williams's alleged excessive use of force. Am. Compl. ¶ 43. But J.Q.R. does not plead that those *investigations* were in any way lacking or improper. Nor does Plaintiff allege that, during those investigations, the District found that Williams had in fact used excessive force.

J.Q.R. also does not sufficiently plead that the District failed to properly train and supervise Williams. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. Were it otherwise, a "less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities . . . ." *Id.* at 62 (internal quotations omitted). J.Q.R. pleads in a conclusory fashion that the District failed to train Williams, but no specific allegations support that claim. In fact, J.Q.R. admits that the "District of Columbia Public Schools had a 'Physical Restraint and Seclusion Policy,'" but does not allege that the District failed to train Williams regarding that policy. Am. Compl. ¶ 8. Without more and combined with the tenuous nature of the failure-to-train allegation, J.Q.R. has not plausibly alleged enough on Count II.

### B. Duplicative Claims in Count IV

Count IV pleads six common-law claims under a single count.[8] The Court dismisses the excessive force claim as duplicative of the assault and battery claim. "The torts of assault and battery are two related but 'conceptually distinct' torts under District law." *Ulysee v. Stokes*, No. 19-cv-01465, 2021 WL 4476768, at *9 (D.D.C. Sept. 30, 2021) (quoting *Jackson v. District of Columbia*, 327 F. Supp. 3d 52, 68 (D.D.C. 2018) (internal quotations omitted)). In the case of

---

[8] This grouping of claims is improper. "[T]he federal courts consistently have required separate statements when separate claims are pleaded, notwithstanding the fact that the claims arose from a single transaction." *Onyewuchi v. Gonzalez*, 267 F.R.D. 417, 422 (D.D.C. 2010) (quoting 5 A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1324)). But for the sake of thoroughness, the Court will still address each claim.

assault, a plaintiff may recover "by proving intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff." *District of Columbia v. Chinn*, 839 A.2d 701, 705 (D.C. 2003) (quotation omitted).  In the case of battery, a plaintiff may recover "by proving an intentional act that causes harmful or offensive bodily contact." *Id.* (quotation omitted).  An officer who effects an arrest commits a battery. *Id.* at 706.  An unreasonable use of force equates to "an assault and battery" under District law. *Hundley v. District of Columbia*, 494 F.3d 1097, 1101 (D.C. Cir. 2007).

In this case, it is unclear exactly what J.Q.R. asserts in terms of excessive force and assault and battery.  It is either the case that he asserts a negligence claim of excessive force alongside an assault and battery claim, or that he asserts a single claim:  assault and battery by way of excessive force.  If it's the first, Plaintiff has not alleged enough facts to survive the motion to dismiss.  If it's the second, the claim is singular to begin with and this Court need not dismiss anything with respect to it.

Under District law, a plaintiff who simultaneously asserts claims for negligence and assault and battery based on excessive force must ensure that the negligence claim is:  (1) "distinctly pled"; (2) "based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself"; and (3) "violative of a distinct standard of care." *Chinn,* 839 A.2d at 711; *see also Spicer v. District of Columbia*, 916 F. Supp. 2d 1, 4 (D.D.C. 2013) ("Plaintiff can maintain both his assault and battery claim and his negligence claim only if he identifies an independent breach of a standard of care beyond that of not using excessive force . . . which may properly be analyzed . . . on its own terms apart from the intentional tort[s]." (internal quotations omitted)).

Under the first approach, J.Q.R.'s complaint has failed to state a plausible claim for the separate charge of negligent use of excessive force.  Again, under the second approach, there was only ever one claim of assault and battery by way of excessive force.  Either way, assault / battery is the only claim left.[9]

J.Q.R. also alleges the torts of false imprisonment and false arrest.  The Court dismisses the false-imprisonment claim as duplicative of the false-arrest one—the only relief the District asked for.  *See* D.C. Partial Mot. to Dismiss, ECF No. 28, at 8–9.[10]  The critical question for both claims is "whether the arresting officer was justified in ordering the arrest of the plaintiff . . . ."[11] *Scott v. District of Columbia*, 493 A.2d 319, 321 (D.C. 1985) (quoting *Dellums v. Powell*, 556 F.2d 167, 175 (D.C. Cir. 1977)).  Indeed, "[i]n the District of Columbia, the torts of false arrest and false imprisonment are indistinguishable." *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 912 n.2 (D.C. Cir. 2015) (internal quotations and citation omitted); *see also Barnhardt v. District of Columbia*, 723 F. Supp. 2d 197, 214 (D.D.C. 2010) ("There is no real difference as a

---

[9] Even in a hypothetical case where Plaintiff had alleged the negligence claim properly, either the negligence claim or the assault and battery claim would have to fail.  Battery and assault are intentional torts.  Negligence is not.  "Intent and negligence are regarded as mutually exclusive grounds of liability.  As the saying goes, 'there is no such thing as a negligent battery.'" *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 30 (D.D.C. 2011) (quoting *Chinn*, 839 A.2d at 711).

[10] J.Q.R. failed to adequately respond to this part of the District's motion.  *See* Pls.' Opp. at Section II ("The fact that the elements of the asserted claims may be strikingly similar to each other is no reason to dismiss claims at this stage.").  Federal Rule of Civil Procedure 8(b)(2) states that "[a] denial must fairly respond to the substance of the allegation.  Plaintiff did not respond in any substantive way to Defendant's duplicative claims argument, and thus he concedes the argument."

[11] False arrest is a narrower, more specific claim of the broader category of false imprisonment. *Jones v. District of Columbia*, No. 16-CV-2405, 2019 WL 5690341, at *5 (D.D.C. June 13, 2019).

practical matter between false arrest and false imprisonment." (internal quotation marks and citations omitted)); *Moore v. District of Columbia*, 79 F. Supp. 3d 121, 128 n.7 (D.D.C. 2015).

### C.  The Intentional-Infliction-of-Emotional-Distress Claim in Count IV

J.Q.R. also asserts an intentional-infliction-of-emotional-distress claim.  To plausibly make out this claim, J.Q.R. needed to plead sufficient facts to show (1) extreme and outrageous conduct on the part of the defendant, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress.  *Smith v. United States*, 843 F.3d 509, 515 (D.C. Cir. 2016) (quoting *Minch v. District of Columbia*, 952 A.2d 929, 940 (D.C. 2008)).  But all that the Amended Complaint alleges is that:  "As a result of being subjected to an unnecessary encounter with police officers, an unnecessary arrest and the infliction of excessive force, plaintiff experienced fear, intimidation, excruciating pain, and emotional and physical trauma."  This statement is a "mere conclusory statement."  *Iqbal*, 556 U.S. at 678; *Daniels v. District of Columbia*, 894 F. Supp. 2d 61, 68 (D.D.C. 2012) (finding the statement "Plaintiffs' conclusory allegation that M.C. 'suffered . . . emotional distress[] and mental anguish' does not adequately state a claim for IIED.").

*        *        *

The Court thus grants Congress Heights dismissal of Count III in its entirety.  In addition, it grants the District of Columbia's motion to dismiss Count II in its entirety and Count IV in part.

An appropriate order will follow.

DATE: August 17, 2022

_____
CARL J. NICHOLS
United States District Judge